GRIFFITH v. RANDOLPH *et al., Appellants.*

1.   **Estoppel** : ACTION FOR RESTITUTION OF PROCEEDS OF SALE UNDER JUDGMENT AFTERWARDS REVERSED.  A plaintiff in an execution, when sued by the defendant therein for the restitution of the proceeds of the execution sale, because of the subsequent reversal of the judgment in the Supreme Court, will be estopped to claim in bar of such restitution that the defendant in the execution before sale thereunder conveyed the premises to a third person.

2.   ——— : ———.  Nor will it be a good defence for the defendant in the restitution suit, that the first case, which was to enforce a vendor's lien, is pending on a second appeal to the Supreme Court, and that the plaintiff in the restitution suit is insolvent, and the defendant therein is, therefore, entitled to retain the proceeds of the execution sale until the second appeal in the original suit is determined, it appearing that such insolvency, if a fact, was caused by the act of the defendant in the restitution suit in selling the property of the plaintiff therein under a judgment afterwards decided by the Supreme Court to be erroneous.

*Appeal from Knox Circuit Court.*—HON. B. E. TURNER, Judge.

Griffith v. Randolph.

AFFIRMED.

*U. S. Hall* for appellant.

(1) Upon the reversal of a judgment, after a sale has been made under execution to a stranger to the suit, the plaintiff is only bound to pay to the defendant the amount for which the property sold, with interest from date of sale. Freeman on Executions, sec. 446 ; *Shields v. Powers,* 29 Mo. 315 ; *Gott v. Powell,* 41 Mo. 416. (2) The court ought to have permitted defendant to prove that the plaintiff had no title to the land at the time the execution was levied upon it. Defendant is bound to make restitution to the real owners of the land and to no one else, therefore, the quit claim deed from Griffith and wife to Anna R. Dickerson was proper evidence. And for the same reason it was proper to prove that Elizabeth Randolph owned an undivided one-half interest in the land. (3) The fund in defendants' hands represents the land and should be paid to those who held mortgages against the land in the order of their priority. *Huford v. Gottburg,* 54 Mo. 271 ; *Helweg v. Heitcamp,* 20 Mo. 570 ; 2 Jones on Mortgages, secs. 1684, 1929, 1934, 1935, and 1940. If defendant should pay this money over to Griffith the mortgagees would be left without any security for their debts. (4) The fact that the case of *Anderson & Randolph v. Griffith* was still pending and undetermined, when coupled with the fact that Griffith was insolvent, was a good defence in equity. The plaintiffs in that case seek a vendor's lien against the same land. Since the sale of the land such lien can only be enforced against the fund derived from the land.

*McQuoid & Clancy* for respondent.

(1) The appellants, so far as they are concerned, have sold the land under an execution and judgment

entirely null and void, and the money realized from the sale was wrongfully and illegally received by appellants, and the law requires them to make immediate restitution of the fruits of said execution sale upon the reversal of the judgment. *Shields v. Powers*, 29 Mo. 294; *Carson's Adm'r v. Suggett's Adm'r*, 34 Mo. 364; *Gott v. Powell et al.*, 41 Mo. 416; *Hannibal & St. Joe Ry. Co. v. Brown et al.*, 43 Mo. 294; *Jones v. Hart et al.*, 60 Mo. 362; Whittlesey's Practice, 522; Herman on Executions, 608; Sedgewick on Damages, 664, and note. The plaintiff in this case was entitled to immediate restitution after the reversal of the other cause in the Supreme Court, and this without regard to what disposition may be afterwards made of the case. The measure of damages was what the land brought at the execution sale with six per cent. interest thereon. (2) The appellants having sold the land to satisfy a judgment enforcing a vendor's lien against the same for a part of the purchase money, will not be permitted to dispute the respondent's title in a proceeding to compel them to make restitution of the proceeds of the sale after the judgment has been reversed. *Austin v. Loring*, 63 Mo. 19; *Campbell v. Johnson*, 44 Mo. 247; *Chouteau v. Goddin*, 39 Mo. 229; *State v. Lais*, 52 Mo. 396; *Thistle v. Buford*, 50 Mo. 278; *Peckman v. Meart*, 49 Mo. 349; *Winston v. Affalter*, 49 Mo. 263. (3) The appellants, in law or otherwise, are not entitled to the benefit that might accrue to Anna Dickerson under respondent's quit-claim deed to her. That deed only conveyed whatever existing title respondent then had and nothing more. The notice of the suit to enforce the vendor's lien was filed on May 26, 1871, in Shelby county, Missouri, and the title sold and conveyed at the execution sale related back to that date. A quit-claim deed is insufficient to convey an after-acquired title. *Mann et al. v. Best et al.*, 62 Mo. 491; *Austin v. Loring*, 63 Mo. 19; *Bogy v. Shoab et al.*, 13 Mo. 258, top paging; *Butcher v. Rogers*, 60 Mo. 138;

*Gibson v. Chouteau's Heirs*, 39 Mo. 536; *Ridgeway v. Holliday el al.*, 59 Mo. 444; *Altimger v. Capelheart*, 68 Mo. 441; *Kimmel v. Benna*, 70 Mo. 52; R. S., 1879, sec. 3940.

RAY, J.—This case grew out of the case of *Anderson v. Griffith*, reported in 66 Mo. 44. The plaintiffs in that case, who are the defendants in this, sought to subject certain real estate, therein described, to the payment of a vendor's lien, and on a trial, in the circuit court, had payment accordingly. The defendant in that case, who is plaintiff here, took the case to the Supreme Court by writ of error, but gave no bond or obtained no *supersedeas*, and upon a hearing in the court the judgment of the circuit court was reversed and case remanded. In the meantime, however, while the case was pending in this court, the plaintiffs below took out a special execution and caused the lands to be sold to satisfy said judgment, and at said sale one Anna R. Dickerson became the purchaser of said property at and for the sum of $1,354, which was paid over to the plaintiffs in the execution accordingly. Thereupon Griffith, the defendant in that suit, institutes this action against Randolph and Anderson, the plaintiffs in that action, to recover from them the amount so received by them at said execution sale, as so much damages sustained by him, by reason of the loss of his said real estate so wrongfully sold by them as aforesaid. By consent the cause was heard by the court without a jury, and there was a finding and judgment for plaintiff, from which defendants appealed to this court.

At the trial the defendants, among other evidence, offered to show that the plaintiff, Griffith, some years prior to the day of said execution sale of his lands, had given a mortgage on said land to said Anna R. Dickerson, then named Anna R. McDaniel, and on the said day of said execution sale, and prior thereto, had also exe-

cuted to said Anna R. Dickerson a quit-claim deed for said lands (the consideration then named being one dollar), and the defendants also offered a transcript of the record of the case of *Anderson and Randolph v. Griffith*, to show that the cause, after a re-trial in the circuit court and finding and judgment for the defendant, the plaintiffs appealed the same to the Supreme Court, where the cause was then still pending, all of which the trial court excluded and the defendants excepted and this action of said court is here assigned for error. There was other evidence in the cause and other points suggested in brief and argument of counsel, but not being material to the proper disposal of the case, they need not be further noticed. The positions of the defendants, as we understand them upon this state of facts, are : First, that upon a reversal of a judgment, after a sale of lands has been made under execution to a stranger to the suit, the plaintiff in said execution is only bound to the defendant therein for the amount for which the property sold, with interest from date of sale ; and if the defendant in execution has sold or parted with his interest in the land, before the sale under execution, then restitution or payment should be made to the grantee of defendant, as the owner of said fund or proceeds of said execution sale, and not to the defendant himself, who has thus parted with his interest in said land, and that it was, therefore, error to exclude the mortgage and quit-claim deed from the plaintiff, so offered in evidence by the defendant and excluded by the court. Secondly, that, after the execution sale of the land to a stranger to the suit, and the reversal of said judgment, and the remanding of said cause by the Supreme Court, the vendor's lien of the plaintiffs, if he had any, can only be enforced against the funds or proceeds of said sale in their hands ; and that, as the defendant was insolvent, the plaintiffs were equitably entitled to hold the fund until the case was re-tried and

finally disposed of; and that it was, therefore, error to exclude the transcript offered by the defendant, to show that the case was still pending on appeal in the Supreme Court.

These positions, we think, are not well taken. The record shows that the quit-claim deed, execution sale and sheriff's deed were all made on the same day, if, indeed, they were not parts of one entire transaction; that the grantee, in both deeds, was one and the same person, who held a prior mortgage from plaintiff on the same lands. Under the facts it must be held, we think, that the title to the land passed by the execution sale and the sheriff's deed thereunder, and that the quit-claim deed, being subordinate to the sheriff's deed, was inoperative and passed no title, and is, therefore, void; that the purchaser at execution sale could not hold the land thus purchased, and at the same time turn around and under the quit-claim deed recover back from the plaintiffs in the execution the price paid by him therefor, nor will the plaintiffs in such execution, after selling the land as the property of the defendant therein, and pocketing the proceeds thereof, be heard to turn round and say that such defendant had no interest or title to the land thus sold. We see no error, therefore, on this point.

As to the second point it is, perhaps, sufficient to say that if plaintiff is shown to be insolvent the record discloses the fact that such insolvency was caused by the wrongful act of the defendants themselves, by which he was despoiled of his estate at their instance under the forms of judicial proceedings, since shown to be erroneous and wrongful. This objection, therefore, is without merit, and comes with a bad grace from the defendants. And, as to the further suggestion of the pendency in this court, on appeal of said Randolph–Griffith suit (out of which this grew), it may be also added: That, as that case and this, were by counsel sub-

mitted and argued together in this court, and as that case has already been finally disposed of by this court, adversely to said Randolph and Anderson, the appellants therein, by an affirmance of the judgment of said circuit court (of which, under the circumstances, we may fairly take judicial notice), there is, therefore, no longer any merit in the objection, if there ever was.

Other suggestions and authorities, made and cited in briefs of counsel, need not be further noticed, as they are not deemed material to the proper disposition of the case.

We find no error in the action of the court, and its judgment in the premises is, therefore, affirmed. All concur.